1  **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                         **FOR THE DISTRICT OF ARIZONA**

8

Tyson Dwayne Gaffney,              )     No. CV 11-0175-PHX-RCB (DKD)
9                                   )
              Plaintiff,            )     **ORDER**
10                                  )
vs.                                 )
11                                  )
Charles L. Ryan, et al.,            )
12                                  )
              Defendants.           )
13 ─────────────────────────────────)

14         Plaintiff Tyson Dwayne Gaffney, who is confined in the Arizona State Prison

15 Complex, Special Management Unit I, in Florence, Arizona, has filed a *pro se* civil rights

16 Complaint pursuant to 42 U.S.C. § 1983 and two Applications to Proceed *In Forma*

17 *Pauperis*.  (Doc. 1, 5, 7.)  The Court will dismiss the Complaint with leave to amend and

18 deny the second *in forma pauperis* application as moot.

19 **I.    Application to Proceed *In Forma Pauperis* and Filing Fee**

20         Plaintiff's Application to Proceed *In Forma Pauperis* will be granted.  28 U.S.C.

21 § 1915(a).  Plaintiff must pay the statutory filing fee of $350.00.  28 U.S.C. § 1915(b)(1).

22 The Court will assess an initial partial filing fee of $32.41.  The remainder of the fee will be

23 collected monthly in payments of 20% of the previous month's income each time the amount

24 in the account exceeds $10.00.  28 U.S.C. § 1915(b)(2).  The Court will enter a separate

25 Order requiring the appropriate government agency to collect and forward the fees according

26 to the statutory formula.

27 **II.   Statutory Screening of Prisoner Complaints**

28         The Court is required to screen complaints brought by prisoners seeking relief against

JDDL-K

1    a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C.

2    § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised

3    claims that are legally frivolous or malicious, that fail to state a claim upon which relief may

4    be granted, or that seek monetary relief from a defendant who is immune from such relief.

5    28 U.S.C. § 1915A(b)(1), (2).

6        A pleading must contain a "short and plain statement of the claim *showing* that the

7    pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does not

8    demand detailed factual allegations, "it demands more than an unadorned, the-defendant-

9    unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

10   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

11   statements, do not suffice." Id.

12       "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a

13   claim to relief that is plausible on its face.'" Id. (quoting Bell Atlantic Corp. v. Twombly,

14   550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content

15   that allows the court to draw the reasonable inference that the defendant is liable for the

16   misconduct alleged."  Id.  "Determining whether a complaint states a plausible claim for

17   relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial

18   experience and common sense." Id. at 1950.  Thus, although a plaintiff's specific factual

19   allegations may be consistent with a constitutional claim, a court must assess whether there

20   are other "more likely explanations" for a defendant's conduct.  Id. at 1951.

21       But as the United States Court of Appeals for the Ninth Circuit has instructed, courts

22   must "continue to construe *pro se* filings liberally." Hebbe v. Pliler, 627 F.3d 338, 342 (9th

23   Cir. 2010).  A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards

24   than formal pleadings drafted by lawyers.'" Id. (quoting Erickson v. Pardus, 551 U.S. 89,

25   94 (2007) (*per curiam*)).

26       If the Court determines that a pleading could be cured by the allegation of other facts,

27   a *pro se* litigant is entitled to an opportunity to amend a complaint before dismissal of the

28   action.  See Lopez v. Smith, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (*en banc*). The Court

JDDL-K                                    - 2 -

1  should not, however, advise the litigant how to cure the defects.  This type of advice "would

2  undermine district judges' role as impartial decisionmakers."  Pliler v. Ford, 542 U.S. 225,

3  231 (2004); see also Lopez, 203 F.3d at 1131 n.13 (declining to decide whether the court was

4  required to inform a litigant of deficiencies).  Plaintiff's Complaint will be dismissed for

5  failure to state a claim with leave to amend because the Complaint may possibly be saved by

6  amendment.

7  **III.    Complaint**

8         Plaintiff alleges four counts for threats to safety, invasion of privacy, and violation of

9  his free speech rights.  Plaintiff sues the following employees of the Arizona Department of

10  Corrections (ADC): Director Charles L. Ryan; Warden McWilliams; Corrections Officer

11  (CO) III Pittario; and CO IV Espinoza.  Plaintiff seeks injunctive, compensatory, and

12  punitive relief.

13         Plaintiff alleges the following facts in his Complaint: Plaintiff is African-American.

14  On January 4, 2010, Plaintiff was housed in the Central Unit.  Plaintiff submitted an inmate

15  letter to Defendant Pittario using the system implemented by Ryan.  Plaintiff believed the

16  letter would be treated as confidential under that system.  In the inmate letter, Plaintiff

17  reported that he wished to speak to Phoenix Homicide detectives concerning murder

18  investigations and associates.  Rather than keeping Plaintiff's inmate letter confidential,

19  Pittario shared Plaintiff's inmate letter "with a building full of maximum security inmates"

20  resulting in Plaintiff being identified as a snitch and exposing him to a threat of being killed

21  or assaulted as well as endangering family members outside of prison.  After the disclosure,

22  Plaintiff received violent threats.

23         On January 6, 2010, Pittario told Plaintiff that "'If he [Pittario] didn't need [protective

24  segregation or PS] than [sic] [Plaintiff] didn't.'"  (Doc. 1 at 3.)  Pittario refused to write an

25  incident report despite knowing that Plaintiff was at risk.  Defendant Espinoza contacted a

26  "CIU" officer but she did not tell homicide detectives about the disclosure of Plaintiff's

27  inmate letter or that an investigation was ongoing.  Defendants Espinoza, McWilliams, and

28  Ryan, individually or collectively failed to act despite knowledge that Pittario had purposely

given Plaintiff's inmate letter to other ethnic groups.  Pittario purposely left Plaintiff in Central Unit "to be tormented by inmates for an unreasonable length of time." (Id.)  Plaintiff has been permanently moved to protective segregation and is marked for death or injury by Caucasian, African-American, Native American, and Hispanic inmates.

Plaintiff contends that the Defendants purposely violated ADC policies concerning "privileged" communications and designed a response with the intention that other inmates would read it, thereby exposing Plaintiff to retaliation by other inmates as a snitch.  Although unclear, Plaintiff appears to allege that the response to his inmate letter was given to a Caucasian inmate, who in turn disclosed Plaintiff as an informant.  Plaintiff contends that Defendants failed to promptly act in response to an excessive risk to his life.  Plaintiff alleges that Espinoza and Pittario conspired to obstruct his incoming mail in retaliation for Plaintiff asking to speak to Phoenix homicide detectives about murder investigations.  Plaintiff contends that they singled out his inmate letter for racial reasons, drafted a response, which was intended to expose Plaintiff as an informant to other inmates and to sew dissent among inmates involved in drug activity and corruption of officers.  He contends that Pittario was supported by Espinoza through McWilliams and Ryan to sabotage his correspondence and to disregard the clear danger to his safety.

**IV.    Failure to State a Claim**

Section 1983 provides a cause of action against persons acting under color of state law who have violated rights guaranteed by the United States Constitution and federal law.  42 U.S.C. § 1983; see also Buckley v. City of Redding, 66 F.3d 188, 190 (9th Cir. 1995).  To state a claim under § 1983, a plaintiff must allege facts supporting that (1) the conduct about which he complains was committed by a person acting under the color of state law and (2) the conduct deprived him of a federal constitutional or statutory right.  Wood v. Ostrander, 879 F.2d 583, 587 (9th Cir. 1989).  A plaintiff must also allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant.  Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976).

Further, to state a claim against a defendant, "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).  For an individual to be liable in his official capacity, a plaintiff must allege that the official acted as a result of a policy, practice, or custom.  See Cortez v. County of Los Angeles, 294 F.3d 1186, 1188 (9th Cir. 2001).  In addition, there is no *respondeat superior* liability under § 1983, so a defendant's position as the supervisor of someone who allegedly violated a plaintiff's constitutional rights does not make him liable. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  A supervisor in his individual capacity, "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor, 880 F.2d at 1045.  Further, where a defendant's only involvement in allegedly unconstitutional conduct is the denial of administrative grievances, the failure to intervene on a prisoner's behalf to remedy the alleged unconstitutional behavior does not amount to active unconstitutional behavior for purposes of § 1983. Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999); accord Mintun v. Blades, No. CV-06-139-BLW, 2008 WL 711636, at *7 (D. Idaho Mar. 14, 2008); Stocker v. Warden, No. 1:07-CV-00589LJODLBP, 2009 WL 981323, at *10 (E.D. Cal. Apr. 13, 2009).

## A.    Vague and Conclusory Allegations

As noted above, Plaintiff alleges claims for threats to safety, invasion of privacy, and violation of his free speech rights.  Plaintiff generally alleges that while he was housed in the Central Unit, he submitted an inmate letter to Defendant Pittario.  In the inmate letter, Plaintiff asked to contact Phoenix homicide detectives to provide them with information in murder investigations.   Although unclear, apparently Defendant Pittario either gave Plaintiff's inmate letter, or a response to that letter, to a Caucasian inmate rather than giving it to Plaintiff.  The Caucasian inmate then revealed to other inmates in the unit that Plaintiff was an informant.  As a result, Plaintiff was threatened by other inmates.  Eventually Plaintiff was "permanently" transferred to protective segregation for his protection because he had

1   been labeled a snitch.

2          Plaintiff's allegations against each of the Defendants are vague and conclusory.

3   Plaintiff claims that Pittario, Espinoza, McWilliams, and Ryan were motivated by his race

4   to purposely encourage and support the disclosure of Plaintiff's inmate letter to other inmates

5   and that they encouraged, supported, or failed to intervene to promptly protect Plaintiff.

6   Plaintiff fails to allege *facts* to support these assertions or to support that the disclosure of

7   Plaintiff's inmate letter was anything other than inadvertent.  Although *pro se* pleadings are

8   liberally construed, <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972), conclusory and vague

9   allegations will not support a cause of action.  <u>Ivey v. Board of Regents of the University of</u>

10  <u>Alaska</u>, 673 F.2d 266, 268 (9th Cir. 1982).  Further, a liberal interpretation of a civil rights

11  complaint may not supply essential elements of the claim that were not initially pled.  <u>Id.</u>  In

12  the following subsections, the Court describes the standard for Plaintiff to sufficiently state

13  a claim for threats to safety and violation of his right to receive mail.

14          **B.      Threats to Safety**

15          Plaintiff appears to be attempting to allege threats to his safety.  Prison officials are

16  required to take reasonable measures to guarantee the safety of prisoners.  <u>Farmer v.</u>

17  <u>Brennan</u>, 511 U.S. 825, 832-33 (1994).  To state a claim for threats to safety, an inmate must

18  allege facts to support that he was incarcerated under conditions posing a substantial risk of

19  harm and that prison officials were "deliberately indifferent" to those risks.  <u>Id.</u>  To

20  adequately allege deliberate indifference, a plaintiff must set forth facts to support that a

21  defendant knew of, but disregarded, an excessive risk to inmate safety.  <u>Farmer</u>, 511 U.S. at

22  837.  That is, "the official must both [have been] aware of facts from which the inference

23  could be drawn that a substantial risk of serious harm exist[ed], and he must also [have]

24  draw[n] the inference."  <u>Farmer</u>, 511 U.S. at 837.

25          **C.      Retaliation**

26          Plaintiff appears in part to be attempting to allege retaliation.  To state a constitutional

27  claim for retaliation, a plaintiff must allege that a defendant acting under color of state law

28  took adverse action against him because the plaintiff engaged in protected conduct, the

1   adverse action was not narrowly tailored to advance legitimate goals, and the adverse action

2   chilled the plaintiff's exercise of his First Amendment rights or caused him to suffer more

3   than minimal harm.  Rhodes v. Robinson, 408 F.3d 559, 567-58 (9th Cir. 2005); see also

4   Hines v. Gomez, 108 F.3d 265, 267 (9th Cir. 1997) (retaliation claims requires an inmate

5   must show (1) that the prison official acted in retaliation for the exercise of a

6   constitutionally-protected right, and (2) that the action "advanced no legitimate penological

7   interest").

8           **D.    Mail**

9           Plaintiff also appears to be attempting to allege a violation of his First Amendment

10  right.  Inmates retain First Amendment rights not inconsistent with their status as prisoners,

11  or with legitimate penological objectives of the corrections system.  See Shaw v. Murphy,

12  532 U.S. 223, 231 (2001); Clement v. California Dep't of Corr., 364 F.3d 1148, 1151 (9th

13  Cir. 2004).  Inmates retain a First Amendment right to send and receive mail.  Witherow v.

14  Paff, 52 F.3d 264, 265 (9th Cir. 1999).  However, that "right is subject to 'substantial

15  limitations and restrictions in order to allow prison officials to achieve legitimate correctional

16  goals and maintain institutional security.'"  Prison Legal News v. Lehman, 397 F.3d 692, 699

17  (9th Cir. 2005); Morrison v. Hall, 261 F.3d 896 (9th Cir. 2001); Prison Legal News v. Cook,

18  238 F.3d 1145 (9th Cir. 2001).  Prison officials may examine a prisoner's communications

19  without infringing upon his rights.  United States v. Wilson, 447 F.2d 1, 8 n. 4 (9th

20  Cir.1971).  Thus, courts have upheld policies that call for inspection of non-legal mail for

21  contraband.  Smith v. Boyd, 945 F.2d 1041, 1043 (8th Cir.1991); Witherow v. Paff, 52 F.3d

22  264 (9th Cir. 1995); Gaines v. Lane, 790 F.2d 1299, 1304 (7th Cir.1986). Nevertheless, a

23  prisoner has a Fourteenth Amendment due process liberty interest in receiving notice that his

24  incoming mail is being withheld by prison authorities.  Frost v. Symington, 197 F.3d 348,

25  353 (9th Cir. 1999).  Further, while prison personnel may regulate speech if such restriction

26  is reasonably related to legitimate penological interests, an inmate cannot be deprived of all

27  means of expression.  Valdez v. Rosenbaum, 302 F.3d 1039, 1048 (9th Cir. 2002) (citing

28  Turner v. Safley, 482 U.S. 78, 92 (1986)).

## V.     Leave to Amend

For the foregoing reasons, Plaintiff's Complaint will be dismissed for failure to state a claim upon which relief may be granted.  Within 30 days, Plaintiff may submit a first amended complaint to cure the deficiencies outlined above.  The Clerk of Court will mail Plaintiff a court-approved form to use for filing a first amended complaint.  If Plaintiff fails to use the court-approved form, the Court may strike the amended complaint and dismiss this action without further notice to Plaintiff.

Plaintiff must clearly designate on the face of the document that it is the "First Amended Complaint."  The first amended complaint must be retyped or rewritten in its entirety on the court-approved form and may not incorporate any part of the original Complaint by reference.  Plaintiff may include only one claim per count.

A first amended complaint supersedes the original complaint.  Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992); Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542, 1546 (9th Cir. 1990).  After amendment, the Court will treat an original complaint as nonexistent.  Ferdik, 963 F.2d at 1262.  Any cause of action that was raised in the original complaint is waived if it is not raised in a first amended complaint.  King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).

## VI.     Warnings

### A.     Release

Plaintiff must pay the unpaid balance of the filing fee within 120 days of his release.  Also, within 30 days of his release, he must either (1) notify the Court that he intends to pay the balance or (2) show good cause, in writing, why he cannot.  Failure to comply may result in dismissal of this action.

### B.     Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure.  Plaintiff must not include a motion for other relief with a notice of change of address.  Failure to comply may result in dismissal of this action.

**C.     Copies**

Plaintiff must submit an additional copy of every filing for use by the Court.  <u>See</u> LRCiv 5.4.  Failure to comply may result in the filing being stricken without further notice to Plaintiff.

**D.     Possible "Strike"**

Because the Complaint has been dismissed for failure to state a claim, if Plaintiff fails to file an amended complaint correcting the deficiencies identified in this Order, the dismissal may count as a "strike" under the "3-strikes" provision of 28 U.S.C. § 1915(g). Under the 3-strikes provision, a prisoner may not bring a civil action or appeal a civil judgment *in forma pauperis* under 28 U.S.C. § 1915 "if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."  28 U.S.C. § 1915(g).

**E.     Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice.  <u>See</u> <u>Ferdik</u>, 963 F.2d at 1260-61 (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)     Plaintiff's Application to Proceed *In Forma Pauperis* is **granted**.  (Doc. 5.)

(2)     As required by the accompanying Order to the appropriate government agency, Plaintiff must pay the $350.00 filing fee and is assessed an initial partial filing fee of $32.41.

(3)     Plaintiff's second *in forma pauperis* application is **denied** as moot.  (Doc. 7.)

(4)     The Complaint is **dismissed** for failure to state a claim.  (Doc. 1.)  Plaintiff has **30 days** from the date this Order is filed to file a first amended complaint in compliance with this Order.

(5)     If Plaintiff fails to file an amended complaint within 30 days, the Clerk of

1   Court must, without further notice, enter a judgment of dismissal of this action with prejudice

2   that states that the dismissal may count as a "strike" under 28 U.S.C. § 1915(g).

3       (6)     The Clerk of Court must mail Plaintiff a court-approved form for filing a civil

4   rights complaint by a prisoner.

5       DATED this 8th day of April, 2011.

6

7

8   _____

9       Robert C. Broomfield
        Senior United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28